DOLORES A. McCORMICK, Plaintiff and Appellee, *v.* RAFAEL VALLÉS SANTOS, Defendant and Appellant.

No. 7729. Argued May 18, 1939.—Decided July 5, 1939.

220

Dubón y Ochoteco, for appellant.    Carlos J. Torres, for appellee.

Mr. Justice De Jesús delivered the opinion of the Court.

Mercedes Valldejuli Díaz, Juana Acosta widow of Delgado and her children Ramón, Haydée and María Delgado Acosta owned in common a rural property, on the outskirts of the town Carolina through which the highway to Canóvanas passed. The community was later dissolved in such a way that that part of the property which lays to the left of the road (going from Carolina to Canóvanas) and which was named lot A, was adjudicated to the widow Delgado and her children, and the part on the right was divided in two: the lot marked B, next to the highway, was also adjudicated to the aforesaid joint owners, and the one further in, which was named lot C, was adjudicated to Mercedes Valldejuli. Before and after the community was dissolved, there was a road in lot B, leading from the highway into the property, that is, up to what later became known as lot C, road which was used to go in and out, and to carry the produce of lot B as well as C, these two parcels being considered as though they were in reality only one.

When the community was divided in the manner aforesaid, nothing was said as to the road in question, and since then, the widow Delgado and her children remained in possession of the property as owners of plots A and B and as lessors of plot C, which as we have said had been adjudicated to Mercedes Valldejuli.

Later the owners of parcels A and B, that is, the widow Delgado and her children, sold them to the defendant Rafael

Vallés and Mrs. Valldejuli sold hers, the one named C, to Dolores A. McCormick. The Delgado family remained in possession of the three lots and continued using the road in the way that they always had. Finally the owners of the properties took material possession of the respective parcels, Mr. Vallés of those marked A and B and Mrs. McCormick of the one name C. The defendant Vallés then closed the road in issue barring the way of Mrs. McCormick to her property C whereon she filed the present action praying for a judgment declaring and decreeing that the road in issue constitutes a servitude of right of way, which affects parcel B of the defendant in favor of property C of the plaintiff and that the former also be condemned to pay the damages which the plaintiff alleges to have suffered due to the closing of the road and to pay the costs and expenses of this action.

The defendant opposed plaintiff's claims. The case went to trial and the court entered judgment for the plaintiff in regard to the existence of the servitude, dismissed the complaint as to the award of damages and sentenced the defendant to pay the costs including attorney's fees, assessed in the amount of $200.

Upon weighing the evidence, the trial court states in its opinion:

"The testimonial evidence varies: thus, while some witnesses say that the only entrance to the farm was the macadamized road which leads to the buildings and prolongs itself to parcel C, and that the persons who intervened in the purchase were never informed that said parcel C would necessarily have another entrance entirely different to the macadamized road, the witnesses for the defendant, the former vendors among them, testified that the road there existing besides the macadamized one, was built by them in the short time during which they had the defendant's parcel leased, and that there never existed any road starting at the buildings of the farm, as it was all considered a lowland and was devoted to pasture. We have not been furnished with a clear explanation in regard to the existence of the tract of sewerage to which we have referred above."

At the end of the opinion the trial court decides the issue in the following manner:

"From the above stated, we arrive at the conclusion that there existed a farm held in common, and within it a road starting at the edge of the highway and which extended itself to the lands which today constitute parcel C, the plaintiff's property; that this farm was divided and on being divided, nothing was agreed upon as to the continuation and use of the road, and the plaintiff having acquired parcel C with the easement upon this road, which is an apparent and ostensible one, said plaintiff has a right to continue using the same."

Feeling aggrieved, the defendant appealed to this Court, assigning the commission of the following errors as grounds for the reversal of the judgment entered:

"1. The District Court of the Judicial District of San Juan, Puerto Rico, on deciding the instant case erred in the construction and application given to Section 477 of the Civil Code (1930 ed.).

"2. The District Court of the Judicial District of San Juan, Puerto Rico, even assuming that it had correctly construed and applied the provisions of Section 477 of the Civil Code (1930 ed.) to the instant case, committed error in deciding that in parcel 'B' described in paragraph 2 of the amended complaint (Judgment Roll, p. 15) the apparent existence of a servitude of right of way was noted creating a duty as servient tenement in favor of the parcel described in the first paragraph of said amended complaint as dominant tenement.

"3. The District Court of the Judicial District of San Juan, Puerto Rico, erred in imposing the payment of costs including $200 as attorney's fees to the defendant.

"4. And finally, the District Court of the Judicial District of San Juan, Puerto Rico, erred in entering judgment against the defendant and in favor of the plaintiff in regard to the existence of a servitude of right of way."

The issue raised by the first two and by the last assignments of errors is limited to determine whether Section 477 of the Civil Code (1930 ed.) is applicable or not to a state of facts such as the one arising from this case. Said article literally reads:

"The existence of any apparent sign of servitude between two tenements established by the owner of both of them, shall be considered, if one of them be alienated, as a title, in order that the servitudes may continue actively and passively, unless, at the time of the division of the ownership of both tenements, the contrary be expressed in the deed of conveyance of either of them, or if the said sign is removed before the execution of such instrument."

Accepting as we accept the weighing of the evidence made by the trial court, and we do so after a detailed study of the pleadings, of the minutes drawn at the ocular inspection and of the transcript of the evidence, no other conclusion, in our opinion can be reached than the one to which the lower court arrived at in its judgment.

It is true that Section 477, *supra,* refers to the apparent sign of servitude between two tenements but its spirit clearly shows that its provisions are equally applicable to one and to more than two properties when these are held by a single owner or by different joint owners. This Court definitely decided in the case of *Martínez* v. *American R. R. Co.,* 19 P.R.R. 925, 927, that the legal precept is applicable to a single property which is afterwards divided in two as it happens in the instant case. It was then held:

"Prior to this legislation the Supreme Court of Spain had applied the theory of the apparent sign. In its judgment of September 14, 1867, 16 Civil Jurisprudence 107, the Supreme Court said:

" 'The provisions of Law XIV, Title XXXI, *Partida* III, treating of the creation of servitudes, are not in conflict with the principle that when a person sells part of a property belonging to him without covenanting in the deed that the tenure of the purchaser shall be different from that of the vendor, it is understood that the land was sold with the servitudes necessary for its use and enjoyment.'

"In its judgment of November 7, 1883, 53 Civil Jurisprudence 208, the said court expressed itself as follows:

" 'According to the doctrine established by this court, the provisions of Law XIV, Title XXXI, *Partida* III, relative to the manner of establishing servitudes, are not in conflict with the principle that when an estate is divided between two different persons and

there is no covenant in the deed that their tenures thereof shall be different from that of the original owner of the whole, it is understood that the servitudes necessary for its use and enjoyment subsist and that the apparent sign thereof is a title for their continuance unless at the time of the division of the property the contrary was expressed, which is what happens in the present case. The property which is the subject-matter of this action was adjudicated to Juan Pérez Charueco in satisfaction of his judgment and after his death it was divided between his children, Juan and María Francisca, without any covenant regarding a different tenure, therefore the judgment appealed from decreeing that Rafaela Liaño recognize the servitude of a right of way for cattle and carts, which is the object of the complaint, does not violate Law XIV, Title XXXI, *Partida* III, as alleged in the first ground of appeal.'

"In the judgment of October 21, 1892, 72 Civil Jurisprudence 242, the court said:

"'As has been held repeatedly by the Supreme Court, the provisions of Law XIV, Title XXXI, *Partida* III, relative to the manner of establishing servitudes, are not in conflict with the principle that when a property is divided among different persons and there is no covenant in the deed of sale providing that the tenure thereof shall be different from that of the original owner of the whole, the servitudes necessary for its use and enjoyment shall be understood to continue.'

"At first sight the construction given by the District Court of Mayagüez to Section 548 of the Revised Civil Code is correct, but if the legal precedents and the facts are taken into account and said section is thoroughly studied, it will be seen that it contains nothing in opposition to the fact that the theory of the apparent sign is applicable to the case of a single property which is divided into two or more parts.

"According to the facts alleged and proved at the trial, the road opened by the owner of the whole property existed when the part sold to the defendant was segregated and one of the roads continued in existence for many years thereafter until it was closed by the defendant in 1911. It was not a secret easement. The vendor continued working his farm and carrying his products to the public highway in the same manner as he did when he owned the entire property—that is, over the roads previously opened by him and now passing through the part sold to the defendant. No servitudes can be said to have existed while the vendor was the owner of the whole

property. The idea of a servitude always presupposes a dominant and a servient estate. The servitude went into full effect from the moment the estate was divided. The vendor ceased to be the owner of the part sold, but the road—the apparent sign of the servitude—continued to exist and to be used as such.

"Under such circumstances, the conclusion is unavoidable that when the defendant company acquired the parcel of land described in the complaint it acquired the same subject to a clear and apparent servitude of right of way in favor of the property of which the plaintiff is the present owner." See *Muñoz* v. *Viejo,* 35 P.R.R. 793.

Appellant alleges that at the time of acquiring parcel B there did not exist any fence whatsoever which made apparent the boundaries between said parcel and parcel C of the plaintiff, but these circumstances in our opinion, do not vary the situation. The apparent sign required by law is the one of the servitude and the road in issue was apparent. When he bought parcel B, the defendant-appellant should necessarily have inquired which were the boundaries that surrounded the property that he was acquiring, and the existence of a fence between one and the other property was not necessary, in order to realize that the road prolonged itself from one to the other farm. Once the boundaries as well as the distance through which they extended were known, no great mental effort was required in order to mentally figure out the fence and discover the sign of the servitude.

What we have stated above leads us to conclude that the assignments of errors marked 1, 2 and 4 were not committed. There only remains to consider the third assignment which refers to the award of costs and attorney's fees.

The imposition of the costs upon the defendants was a corollary of the judgment entered against him. The lower court had no discretion in regard to their imposition. Section 327 of the Code of Civil Procedure as amended by Act No. 69 of May 11, 1936, (Laws 1936, (1) p. 353).

The award of attorney's fees depends on the temerity of the defendant-appellant in opposing the claims of the ap-

pellee. The evidence reveals that after the road was closed and before this action was filed, the defendant was informed that he had no right to close the road. He insisted in his claims and forced the plaintiff to incurr in the expenses incident to a suit which could and should have been avoided. There was temerity on his part. The amount awarded as attorney's fees is in our opinion, a just and reasonable one, considering the degree of temerity on the part of the defendant and the services necessarily rendered by counsel for plaintiff. The third of the errors assigned was not committed either.

For the foregoing reasons the appeal is dismissed and the judgment appealed from affirmed.

Mr. Justice Travieso took no part in the decision of this case.